[Sac. No. 1361.     In Bank.—October 1, 1906.]

COUNTY OF PLUMAS, Appellant, v. D. C. WHEELER, and D. W. RIDENOUR, Partners, etc., Respondents.

LICENSE FEE—ACTION BY COUNTY—ORDINANCE REGULATING SHEEP BUSINESS—POLICE POWER—SUFFICIENCY OF COMPLAINT.—In an action by a county to recover a license fee for conducting the business of raising, grazing, herding, and pasturing sheep on lands within the county, under a county ordinance purporting to regulate the business, under the police power granted by section 11 of article XI of the constitution, and by section 3366 of the Political Code, where the judgment was for the defendant after demurrer sustained to the complaint, if the ordinance in question does not appear upon its face to be invalid, the order sustaining the demurrer cannot be upheld, and the judgment rendered thereupon cannot be upheld.

ID.—EFFECT OF CODE PROVISION.—The effect of section 3366 of the Political Code was to cut off the power before possessed by counties under the County Government Act to collect a license tax for revenue and to restrict the licensing power to matters of regulation alone, in pursuance of the police power.

ID.—EXTENT OF POLICE POWER.—The police power is an extensive one, and in its exercise a wide discretion is necessarily committed to the legislative body in which it is vested, though the legislative determination is not conclusive, and the rights of property cannot be invaded under the guise of police regulation, if its manifest object is otherwise. The question in each case is whether there has been an exercise of reasonable discretion, or whether the legislative action is a mere excuse for an unjust discrimination or the oppression or spoliation of a particular class.

ID.—REGULATION BY MEANS OF LICENSE FEE—REASONABLENESS OF CHARGE.—The power to regulate a business may be exercised by means of a license fee or charge, provided its amount is not more than is reasonably necessary for the regulation of the business, considering the necessary or probable expenses incident to the licensing, inspection, and enforcement of the ordinance under a proper system of supervision and police surveillance, including the labor of officers and other expenses thereby incurred, and all the incidental consequences that may be likely to subject the public to cost, in relation to the business regulated.

ID.—QUESTION OF FACT.—Where the license fee is not so obviously excessive as to lead irresistibly to the conclusion that it is imposed for revenue purposes, the reasonableness of the charge for expenses is a question of fact for the determination of the jury, in view of the conditions shown to exist in the county imposing the fee.

ID.—PRESUMPTION IN FAVOR OF ORDINANCE—FEE NOT CLEARLY EXCESSIVE.—The presumption is in favor of the reasonableness and validity of the charge. The county must be deemed at liberty to make the charge large enough to cover any reasonably anticipated expenses, and is not limited to the exact amount of the expense as it may subsequently develop. It cannot be said as matter of law that a license fee of ten cents per head on sheep and lambs goes beyond any reasonable limits allowed under the rules of law.

ID.—ACTION BY COUNTY.—The right of action given by the ordinance to the county does not show that the license fee is for revenue. Section 3366 of the Political Code expressly authorizes the county to fix the rate of the license tax for police regulation, and to provide for collection of the same by suit or otherwise.

ID.—PROHIBITION OF BUSINESS WITHOUT LICENSE — ORDINANCE CONSTRUED WITH PENAL CODE—"LAW OF THIS STATE."—The mere fact that the county ordinance does not in terms make it illegal to carry on the business regulated unless a license be first procured is not material. A county ordinance is a "law of this state," within the meaning of section 435 of the Penal Code, making it a misdemeanor for any person to commence or carry on any business for which "a license is required by any law of this state, without taking out or procuring the license prescribed by such law." The county ordinance is to be read in connection with that section, and so construed is sufficient to prohibit such business and to attach a penalty to the commission of the prohibited act.

APPEAL from a judgment of the Superior Court of Plumas County. J. E. Prewett, Judge presiding.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and L. N. Peter, District Attorney, for Appellant.

Cheney & Massey, Campbell, Metson & Campbell, and W. H. Metson, for Respondents.

SLOSS, J.—This is an appeal from a judgment in favor of the defendants, entered upon the plaintiff's failure to amend its complaint after a general demurrer thereto had been sustained. The action was brought by the county of Plumas

to recover the sum of one thousand three hundred dollars, alleged to be due it from defendants as a license fee for conducting the business of raising, grazing, herding, and pasturing sheep and lambs within the county. The plaintiff's claim is based upon an ordinance adopted by the county supervisors in January, 1902, and set forth in full in the complaint. The enactment is entitled "An ordinance regulating the business of raising, grazing, herding, and pasturing sheep and lambs in the county of Plumas, state of California." Section 1 requires persons engaging in the described business in the county to present annually to the license collector an affidavit showing the number of sheep or lambs owned or controlled by them in the county, and whether such sheep or lambs are infected with contagious disease. Section 2 prohibits the bringing into the county of sheep or lambs infected with certain diseases. Sections 3, 4, 5, 6, and 7 make certain provisions regulating the conduct of said business. In a general way, it is sufficient to say that provision is made against the camping or grazing of sheep or lambs on public roads or trails, against dipping near public highways or buildings, and against such acts as would cause injury to the roads or trails of the county or delay and inconvenience to travelers. Section 8 makes a violation of any of the preceding sections a misdemeanor. Section 9, which provides for the license here sought to be collected, reads as follows: "Section 9. Every person, firm or corporation engaging in said Plumas County in the business of raising, grazing, herding or pasturing sheep or lambs must annually, at the time of the commencement of said business, procure a license therefor from the license collector of said county, and must pay for said license, the license fee or charge of ten cents for each sheep or lamb owned by, or in possession of, or under the control of such person, firm or corporation." The remaining sections of the ordinance (except section 13, which will be referred to hereafter) provide for the collection of the license fee, section 16 declaring that the license fee or charge is a debt owing to the county, and shall become due and payable to the county in advance. Section 11 authorizes the district attorney to bring suit, in the name of the county, to recover license fees due.

The complaint alleges that the defendants, between May 1,

1902, and June 19, 1902, were engaged in the business of raising, grazing, herding, and pasturing sheep and lambs in the county of Plumas, that during that time they owned and possessed in said county thirteen thousand sheep and lambs, and that they have failed and refused to take out a license or to pay any license fee.

If the ordinance in question is a valid exercise of the legislative power of the county, the complaint states a cause of action. And, on the record before us, consisting simply of the complaint and the demurrer, the validity of the ordinance must be determined from an inspection of its provisions alone, read in the light of facts within the judicial knowledge of the court. Unless, so read, it appears that the ordinance is invalid on its face, the order sustaining the demurrer cannot be upheld.

Under the state constitution (art. XI, sec. 11). "Any county . . . may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." Section 3366 of the Political Code, enacted in 1901, provides that "Boards of supervisors of the counties of the state . . . shall, *in the exercise of their police powers, and for the purpose of regulation, as herein provided, and not otherwise,* have power to license all and every kind of business not prohibited by law, and transacted and carried on within the limits of their respective jurisdictions, . . . to fix the rates of license tax upon the same, and to provide for the collection of the same by suit or otherwise." The effect of this statutory provision was to cut off the power, theretofore residing in boards of supervisors under the County Government Act (Stats. 1897, p. 465, sec. 25, subd. 25), to collect a license tax *for revenue.* "The words 'not otherwise' curtail and cut off all power boards of supervisors theretofore had to issue licenses and charge therefor as a revenue measure. . . . Indeed, it may be said that every feature of this act of 1901 indicates a plain purpose upon the part of the legislature to restrict the licensing power of boards of supervisors and city councils to matters of regulation alone." (*Ex parte Pfirrmann,* 134 Cal. 143, [66 Pac. 205].)

Can the ordinance now before us be sustained as a valid exercise of the power of the county to regulate the business

of raising, herding, grazing, and pasturing sheep? The principles affecting the right of legislative bodies in the exercise of what is known as the "police power," to place restrictions upon the conduct of lawful pursuits and occupations, are well settled, although there is often great difficulty in applying these principles to a given state of facts. It is within the legislative discretion to place such restrictions upon the use of any property or the conduct of any business as may be reasonably necessary for the public safety, comfort, or health. "The police power, the power to make laws to secure the comfort, convenience, peace, and health of the community, is an extensive one and in its exercise a very wide discretion as to what is needful or proper for the purpose is necessarily committed to the legislative body in which the power to make such laws is vested." (*Ex parte Whitwell,* 98 Cal. 73, [35 Am. St. Rep. 152, 32 Pac. 870].) "Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient." (*Commonwealth* v. *Alger,* 7 Cush. 53.) "The most proper business may be regulated to prevent its becoming offensive to the public sense of decency, or for any other reason injurious or dangerous." (Cooley on Constitutional Limitations, 6th ed., 753.) The manner and extent of such regulation are primarily legislative questions, and the courts will not interfere unless it clearly appears that the legislature has, under the guise of regulation, imposed an arbitrary or unreasonable burden upon the use of property or the pursuit of an occupation. But the legislative determination is not conclusive. As this court said in *In re Smith,* 143 Cal. 368, [77 Pac. 180], "The law will not allow the rights of property or business to be invaded under the guise of police regulation for the benefit of the public health or good order, when it is manifest that such is not the object or purpose of the enactment or by-law." "The question in each case," says the supreme court of the United States, "is whether the legislature has adopted the statute in exercise of a reasonable discretion, or whether its action be a mere excuse

for an unjust discrimination, or the oppression or spoliation of a particular class." (*Holden* v. *Hardy,* 169 U. S. 366, [18 Sup. Ct. 383].)

It is also well settled that the power to regulate a business may be exercised by means of a license fee or charge. The amount of the license fee, however, must not be more than is reasonably necessary for the purpose sought,—i. e. the regulation of the business. If it is so great that the court can plainly see that the purpose of its imposition was to realize a revenue under the guise of regulating the business, the provision for the fee cannot stand as an exercise of the police power. The elements that may properly be taken into consideration by the legislative body in determining the amount of license fee that may for purposes of regulation be imposed upon any business are stated in two recent decisions of the United States supreme court. Both were cases involving the validity of ordinances imposing license charges upon telegraph poles and wires. *Western Union Telegraph Co.* v. *New Hope,* 187 U. S. 419, [23 Sup. Ct. 204], was an action by the borough of New Hope to recover from the telegraph company a license fee of one dollar per pole and two dollars and fifty cents per mile of wire on the poles and wires maintained by the defendant within its limits. The defendant contended that the requirement of the fee amounted to a regulation of interstate commerce. Judgment for the plaintiff upon the verdict of a jury was affirmed, the court quoting with approval the following language of the supreme court of Pennsylvania in *Taylor* v. *Postal Tel. Cable Co.,* 202 Pa. St. 583, [52 Atl. 128] : "Clearly the reasonableness of the fee is not to be measured by the value of the poles and wires or of the land occupied, nor by the profits of the business. The elements which enter into the charge are the necessary or probable expense incident to the issuance of the license and the probable expense of such inspection, regulation, and police surveillance as municipal authorities may lawfully give to the erection and maintenance of the poles and wires. . . . Whether or not the fee is so obviously excessive as to lead irresistibly to the conclusion that it is exacted as a return for the use of the streets, or is imposed for revenue purposes, is a question for the courts, and is to be determined upon a view of the facts." In *Atlantic etc.*

*Tel. Co.* v. *Philadelphia,* 190 U. S. 160, [23 Sup. Ct. 817], action had been brought on a similar ordinance. In holding that the reasonableness of the charge was a question of fact upon which the parties were entitled to the finding of a jury, the court states the rule in the language of Mr. Justice Shiras in a similar case in the circuit court of appeals (*Philadelphia* v. *Western Union Tel. Co.,* 89 Fed. 454),—i. e. "When it is said, in some of the cases, that such a question is for the determination of the court, it is not meant that the question may not properly be submitted to a jury. What is meant by such observations is that courts are not precluded from considering the reasonableness of the legislative act prescribing the terms and amount of the charges. . . . Regarding, then, the issue to be tried as one of fact, we think it is one which, from its nature, is eminently fit for the determination of a jury. The expenses attending direct regulations and oversight are not only to be considered, but also the incidental cost to which the municipality is subjected in providing for and maintaining a proper system of supervision. We cannot undertake to specify all the particulars which should be brought into view where the reasonableness of a municipal ordinance is challenged in a court; but we think that the rule laid down in Cooley on Constitutional Limitations (ed. 1886), p. 242, may be safely adopted: "A municipal corporation may impose, under the police power, such a charge for the license as will cover the necessary expenses of issuing it, and the additional labor of officers and other expenses thereby incurred."

It is not to be understood from these citations that the costs to the municipality which may be considered are simply those which arise directly in the enforcement of the regulatory provisions themselves. The license fee may properly be fixed with a view to reimbursing the city, town, or county for all expense imposed upon it by the business sought to be regulated. "In fixing upon the fee, it is proper and reasonable to take into account not the expense merely of direct regulation, but all the incidental consequences that may be likely to subject the public to cost in consequence of the business licensed." (Cooley on Taxation, p. 599.) Thus, in *Philadelphia* v. *Western Union Tel. Co.,* 89 Fed. 460, in which the rule was stated in language which has had the approval

of the United States supreme court, it was held to be error, in a case involving the reasonableness of a charge for maintaining telegraph poles and wires, to exclude evidence tending to show that the city was, by reason of the wires, put to additional expense in providing a greater number of fire companies and apparatus.

Applying these rules to the ordinance before us, can it be said that the charge of ten cents per head of sheep and lambs is so clearly excessive, so grossly disproportionate to the expense incurred by the county by reason of this business, that the enactment is void upon its face? It is to be remembered that the presumption is in favor of the reasonableness of the charge, and that the county is not limited to the exact amount of the expense, as it may subsequently develop. "The municipality is at liberty to make the charge large enough to cover any reasonable anticipated expenses." (*Atlantic etc. Tel. Co.* v. *Philadelphia,* 190 U. S. 160, [23 Sup. Ct. 817].)

The herding, pasturing, and raising of sheep is undoubtedly a lawful, indeed a necessary, vocation. But there can be no question that it, in common with the keeping of other kinds of livestock, is an occupation which may properly be subjected to reasonable restrictions for the purpose of preventing or lessening the annoyance or discomfort which, if unrestrained, it would be likely to cause. (Tiedeman on State and Federal Control, p. 838; *Sifers* v. *Johnson,* 7 Idaho, 798, [97 Am. St. Rep. 271, 65 Pac. 709].) The first eight sections of the ordinance under examination indicate the nature of some of the objectionable features of this business. Certain acts are prohibited, and the violation of these acts is made a misdemeanor. As bearing upon the expense to which the county may be subjected, we note that it is made the duty of the peace officers in the various townships to cause the ordinance to be enforced and to report all violations thereof, and claims for services rendered or expenses incurred in performing these duties are claims against the county. (Sec. 13.) What expense the county will be put to in the enforcement of the ordinance cannot be determined from an inspection of the ordinance itself. It is a question of fact, the decision of which will depend upon the evidence to be introduced at a trial. If it should appear that all the items

of expense which could reasonably be anticipated—including not only the cost of issuing the license, but every other expense arising from the proper supervision or control of the business—would amount to less than ten cents per sheep (or lamb) the ordinance could not be sustained as a regulatory measure. If, on the other hand, it should appear from the facts shown that the reasonably anticipated expenses would equal or exceed the fee exacted, the ordinance must be held valid. Which of these two states of facts existed in Plumas County at the time of the adoption of the ordinance this court cannot say. The expense to which the county would be put, or could reasonably expect to be put, by the herding, grazing, raising, and pasturing of sheep within its borders depends upon a variety of circumstances of which we do not have judicial knowledge. To arrive at the amount of such expense it would be necessary to consider the topographical conditions of the county, the extent of the industry as practiced there, the effect of the industry on the roads, trails, and other public property of the county, the probable cost of prosecutions for violations of the ordinance, and any other matters having a reasonable tendency to indicate the cost to which the county would be subjected by the business sought to be regulated. From these elements there could be a determination of the ultimate question of the reasonableness of the charge. And this ultimate question must be determined by a jury (or by the court, if a jury be waived) which has before it the facts from which a conclusion can be drawn. In the absence of any such facts, we cannot say that the charge here imposed is unreasonable. We do not intend to hold that there may not be ordinances imposing license fees so large that they appear, upon a mere reading, to go beyond any reasonable limits allowed under the rules of law which have been discussed. But we think a fee of ten cents per head on sheep and lambs does not come within this category.

Much stress is laid upon the fact, which appears from decisions of this court in earlier cases (*Ex parte Mirande,* 73 Cal. 365, [14 Pac. 888] ; *El Dorado* v. *Meiss,* 100 Cal. 268, [34 Pac. 716] ; *Inyo County* v. *Erro,* 119 Cal. 119, [51 Pac. 32] ; *Mono County* v. *Flanigan,* 130 Cal. 105, [62 Pac. 293]), that, even when counties had the power to license for revenue, a tax of only five cents per head was imposed by various

counties. But this is not conclusive. The conditions in the counties which fixed those taxes may have been entirely different from the conditions existing in Plumas County. "What is reasonable in one municipality may be oppressive and unreasonable in another." (*Atlantic etc. Tel. Co.* v. *Philadelphia,* 190 U. S. 160, [23 Sup. Ct. 817].) And that the reasonableness of such a license fee is peculiarly a question of fact, to be determined upon the conditions that may be shown to exist in the particular governmental subdivision imposing the fee, is well illustrated by the two cases of *Western Union Tel. Co.* v. *New Hope,* 187 U. S. 419, [23 Sup. Ct. 204], and *Atlantic etc. Tel. Co.* v. *Philadelphia,* 190 U. S. 160, [23 Sup. Ct. 817], both decided by the supreme court of the United States during the same year. Each case involved the validity (as a measure of regulation) of an ordinance imposing a license fee on the maintenance of telegraph poles and wires. The amount of the charge was the same in both cases. In the New Hope case the question of reasonableness was submitted to a jury, which found in favor of the tax. The judgment was affirmed. In the Philadelphia case the court took the question from the jury and directed a verdict upholding the tax. The judgment was reversed, the court holding that the question was one of fact which should have gone to the jury.

In the case at bar we are not aware of any facts from which we can say as a matter of law that the license fee imposed is necessarily, under all circumstances and in every locality, unreasonable or excessive. It may be unreasonable and excessive, in view of the conditions existing in Plumas County. If it is, the defendants may so allege, and if they prove their allegations, they will be under no liability. But, in view of the purpose of the ordinance, as declared in its title, and the presumption of validity attending such enactments, it should not be held that the ordinance is on its face a revenue measure disguised as a provision for regulation.

We see no force in the contention that the provision in the ordinance authorizing a suit by the county to recover the amount of the license fee indicates that the tax is exacted for revenue rather than as an exercise of the police power. Section 3366 of the Political Code, which restricts the licensing power of the county supervisors to licensing for regula-

tion, in the exercise of their police powers, expressly authorizes them to fix the rates of license tax, and "to provide for the collection of the same *by suit* or otherwise." *Sonora* v. *Curtin,* 137 Cal. 583, [70 Pac. 674], and *Santa Monica* v. *Guidinger,* 137 Cal. 658, [70 Pac. 732], decide nothing inconsistent with this view. Those were cases of ordinances imposing license fees *for revenue* and providing for the collection of the fees by suit. The ordinances were passed prior to the enactment of section 3366. It was held that the adoption of that section repealed the tax in each case, and that the right of action to recover the tax fell with the tax. But it was not held that a charge which a county or city is authorized to impose under section 3366 of the Political Code cannot be collected by civil suit.

The point is made that the provision requiring the payment of a license fee cannot be regarded as a regulation, inasmuch as the ordinance does not "forbid the carrying on of the business mentioned unless a license be procured." If such prohibition be an essential element of a regulatory license fee, it is supplied by the provisions of section 435 of the Penal Code, to wit: "Every person who commences or carries on any business, trade, profession, or calling, for the transaction or carrying on of which a license is required by any law of this state, without taking out or procuring the license prescribed by such law, is guilty of a misdemeanor." A county ordinance is a "law of this state" within the meaning of this section. (*In re Lawrence,* 69 Cal. 608, [11 Pac. 217].) An ordinance providing no punishment for doing business without a license, but merely providing what the license should be, is therefore, when read in connection with the Penal Code, sufficient to prohibit the doing of such business, and to attach a penalty to the commission of the prohibited act. (*Ex parte Christensen,* 85 Cal. 210, [24 Pac. 747]. See, also, *In re Sic,* 73 Cal. 148, [14 Pac. 405]; *Ex parte Mansfield,* 106 Cal. 400, [39 Pac. 775]; *Ex parte Stephen,* 114 Cal. 282, [46 Pac. 86].)

Various other points are made by the respondents, but in our judgment they are all reducible to, or are based upon, the proposition that the ordinance in question is necessarily to be regarded as a revenue measure. These points are therefore sufficiently answered by what has already been

said in this opinion regarding the character of the enactment.

The judgment is reversed.

Shaw, J., Angellotti, J., and Beatty, C. J., concurred.

Henshaw, J., and McFarland, J., dissented.

Rehearing denied.