[S. F. No. 5389. In Bank.—April 25, 1911.]

JOHN RAPP & SON (a Corporation) et al., Respondents, v. HUGO KIEL et al., Police Commissioners of the City and County of San Francisco et al., Appellants.

MUNICIPAL CORPORATION—SAN FRANCISCO—SALE OF LIQUOR—REQUIREMENT OF PERMIT FROM POLICE COMMISSIONERS.—The only provisions in the freeholders' charter of the city and county of San Francisco that require a permit from the police commissioners for the sale, etc., of liquor are those contained in chapter III of article VIII, and such provisions are confined to those persons who sell liquor "in less quantity than one quart," and to those who sell liquor "to be drunk on the premises."

ID.—LIMITATION ON POWER TO IMPOSE LICENSE TAX—SALE OF LIQUOR AT FIXED PLACE OF BUSINESS.—Under section 1 of chapter II of article II of that charter, prohibiting the board of supervisors from imposing a license tax "upon any person who, at any fixed place of business in the city and county, sells or manufactures goods, wares or merchandise, except such as require permits from the board of police commissioners," the supervisors have no authority to impose any license charge, fee, or tax of any kind, either for purposes of regulation or revenue, upon any person who, at a fixed place of business in the city and county, sells malt or fermented liquors or wines, except such as sell such liquors or wine in less quantity than one quart, or who sell the same to be drunk on the premises.

ID.—INVALID ORDINANCE—SALE OF LIQUOR IN SEALED PACKAGES OF MORE THAN ONE QUART—REGULATORY ORDINANCE.—The ordinance adopted by the board of supervisors of said city and county on May 25, 1908, attempting to impose a license tax upon persons disposing of malt or fermented liquors or wines in quantities of one quart or more, less than five gallons, when the same is contained in sealed packages, and not to be drunk on the premises where sold, although it is purely regulatory in character, was beyond the power of the board to enact, and is void.

ID.—LICENSE TAX WITHIN MEANING OF CHARTER.—A license fee or charge imposed by a purely regulatory ordinance is a "license tax" within the meaning of that term as used in such provision of the charter.

ID.—LICENSE TAX INCLUDES REGULATORY LICENSE CHARGES.—The words "license tax" have been frequently used by the legislature of this state, and by the courts, as including regulatory license charges as well as charges imposed for revenue purposes, and the connection in which the term is used in a particular case may properly be looked to for the purpose of determining its intended scope.

ID.—FREEHOLDERS' CHARTER MAY LIMIT EXERCISE OF POLICE POWER.—The legislative body of a city having a freeholders' charter may be limited by charter provision in the exercise of the police power conferred upon the city by the constitution of the state.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a temporary injunction. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

W. H. Langdon, and R. W. Harrison, for Appellants.

Hiram W. Johnson, for Respondents.

ANGELLOTTI, J.—This case presents the question of the validity of an ordinance adopted by the board of supervisors of the city and county of San Francisco on May 25, 1908, entitled an ordinance "Imposing a license for the purpose of regulation upon persons, firms or corporations selling, giving away or serving malt or fermented liquors or wines, or any admixture thereof, in quantities of one quart or more, less than five gallons, when the same is contained in sealed packages, and not to be drunk on the premises where sold, given away or served, requiring a permit therefor, and regulations relating thereto." This title fairly states the nature of the ordinance, which makes it unlawful for any person to do any of the prescribed acts "without first having obtained a permit therefor from the board of police commissioners, and paying the license fee herein provided," provides that before doing any such act every person shall procure a permit from the board of police commissioners and a license from the tax collector, paying therefor "a license fee of one hundred and fifty ($150.00) dollars per annum," payable in quarterly installments of $37.50 in advance, provides that the tax-collector shall not issue any license or renewal until the applicant has obtained the requisite permit and paid the license fee, provides that every license shall expire at the end of the quarter for which it is issued and that application for renewals shall be passed upon by the board of police commissioners after certain notice given to the public, provides that such board shall have full power to grant or withhold a permit or revoke any permit already granted, declares that the ordinance and the "license herein imposed" are for the purposes of regulating the business therein described, and makes a violation of any provision of the ordinance a misdemeanor.

The trial court concluded that this ordinance is invalid, and made an order enjoining its enforcement. This appeal is from such order, and the sole question presented is that of the validity of the ordinance.

The theory of respondents, adopted by the trial court, is that, by reason of certain provisions of the freeholders' charter of the city and county of San Francisco, the board of supervisors was without power to impose any license fee or charge upon persons who, at any fixed place of business in the city and county, do any of the acts prescribed in the ordinance,

and that the provisions of the ordinance requiring the payment of such fee or charge are so inseparably blended with the other provisions as to make the whole ordinance void. It is not disputed by appellants that if the provisions for a license fee or charge are invalid the whole ordinance is void.

The charter provisions material to the question presented are as follows:—

By section 1, chapter II, of article II, a chapter entitled "Powers of supervisors," it is provided:—

"Section I. Subject to the provisions, limitations and restrictions in this charter contained, the board of supervisors shall have power:

"1. To ordain, make and enforce within the limits of the city and county all necessary local, police, sanitary and other laws and regulations.

. . .

"15. To impose license taxes and to provide for the collection thereof; but no license taxes shall be imposed upon any person who, at any fixed place of business in the city and county, sells or manufactures goods, wares, or merchandise, except such as require permits from the board of police commissioners as provided in this charter."

The only provisions in the charter that require a permit from the police commissioners for the sale, etc., of liquor, are those contained in chapter III of article VIII, and such provisions are confined to those persons who sell liquor *"in less quantity than one quart,"* and to those who sell liquor *"to be drunk on the premises."*

It is to be borne in mind that the ordinance before us deals solely with those who dispose of malt or fermented liquors or wines, *in quantities of one quart or more, less than five gallons,* when the same is contained in sealed packages, *and not to be drunk on the premises where sold,* including all who sell in this way at fixed places of business in the city and county of San Francisco. It is manifest that such persons are within the exemption provision of subdivision 15 of section 1, chapter II of article II, of the charter, and that by reason of that fact, no charge or burden within the meaning of the term "license taxes," as used in such subdivision, can be imposed upon them by the supervisors of the city and county. It is apparent, therefore, that the question presented is simply whether or

not such a charge or fee as is imposed by the ordinance before us is a "license tax" within the meaning of that term in the charter provision.

The claim of appellants is, of course, that the ordinance is one enacted solely in the exercise of the police power of regulating the business therein specified, and that the charter provision invoked, fairly construed, has no application to a license fee or charge imposed solely for purposes of regulation, but has to do only with license taxes imposed for revenue purposes.

We are of the opinion that a court would not be warranted in holding otherwise than that the ordinance and the license thereby imposed were, as the ordinance expressly declares, solely for the purpose of regulating the business therein specified. Every provision therein, other than those relating to the license fee, is obviously purely regulatory in character. As to the license fee provisions, "it is . . . well settled that the power to regulate a business may be exercised by means of a license fee or charge" in such amounts as "is reasonably necessary for the purpose sought, i. e., the regulation of the business" (*County of Plumas* v. *Wheeler,* 149 Cal. 763, [87 Pac. 909]), and it certainly cannot be contended with any show of reason that the imposition of a license fee of one hundred and fifty dollars per annum demonstrates "that the purpose of the imposition was to realize a revenue under the guise of regulating the business" (*County of Plumas* v. *Wheeler,* 149 Cal. 763, [87 Pac. 909]. See *Ex parte McNally,* 73 Cal. 632, [15 Pac. 368].) The provisions of the ordinance are not such as to warrant the courts in concluding that the board of supervisors did not therein truthfully state its purpose.

Is a license fee or charge imposed by a purely regulatory ordinance a "license tax" within the meaning of that term as used in the charter provision?

A "tax," under a strict and technical construction of the term, probably includes only charges imposed for the purpose of producing revenue, as distinguished from charges imposed for purposes of regulation in the exercise of the police power. It has been said by some authorities in other states that a license fee or charge imposed solely for regulatory purposes is in no proper sense a tax, and we may concede that this holding is technically correct. But the term "license tax" has often been used in this state by both the legislature and by this

court, as including license charges imposed for regulatory purposes, and we have no doubt that, in its popular meaning, it includes any charge imposed for a license, whether the object be regulation, or revenue, or both regulation and revenue. In our original general Municipal Corporation Act of 1883 (Stats. 1883, c. 49, p. 93], we find that the board of trustees of a city or town of the sixth class was invested with power "to license, for purposes of regulation and revenue, all and every kind of business . . . , to fix the rates of *license tax upon the same,* and to provide for the collection of the same by suit or otherwise." (Sec. 862.) Here clearly the term "license tax" was used to include both regulatory and revenue charges. A similar provision was incorporated as to cities of the fifth class, except that the words "including the sale of intoxicating liquors" were inserted after the word "business." (Sec. 764.) When, by an act approved March 23, 1901, (Stats. 1901, p. 635), the legislature sought to prohibit the imposition of any license charge for revenue purposes and to allow such licensing only for purposes of regulation, it entitled its act as being one to add a new section to the Political Code, 3366, "relating to the powers of boards of supervisors, city councils, and town trustees in their respective counties, cities, and towns, and to impose a *license tax.*" In the body of the act, such legislative bodies were authorized "in the exercise of their police powers, and for the purpose of regulation, as herein provided, and not otherwise, . . . to license all and every kind of business . . . , *to fix the rates of license tax upon the same, and to provide for the collection of the same by suit or otherwise.*" This court held, as was obvious, that the words, "license tax" were used as synonymous with "license fee or charge," saying, also, that "the words 'license tax' do not necessarily and always mean a license tax assessed and collected for purposes of revenue." In *Ex parte Ah Toy,* 57 Cal. 92, this court said: "Our attention has not been called to any general statute which in terms or by implication prohibits the imposition of a license tax as a police regulation." In *Ex parte Lemon,* 143 Cal. 559, [65 L. R. A. 946, 77 Pac. 455], and in *County of Plumas* v. *Wheeler,* 149 Cal. 767, [87 Pac. 909], the words "license tax" were used by this court as synonymous with a license fee or charge imposed solely in the exercise of police power. The instances thus cited, undoubtedly only a few of very many that can be found in

statutes and opinions of this court, are sufficient to show that the words "license tax" have been freely used as including regulatory license charges as well as charges imposed for revenue purposes, and that the connection in which the term is used in a particular case may properly be loked to for the purpose of determining its intended scope.

There is nothing to indicate that the words "license tax" were used in the charter provision in the narrow technical sense contended for by appellants.

In view of the fact that the term has been so frequently used by the legislature and the courts in the broad sense of including license charges of every kind, it might be argued with some force that, if the charter framers had intended to confine the application of their prohibition to license taxes imposed solely for revenue purposes, they would have so stated, just as the legislature did in limiting legislative bodies to license charges for regulation only, by the act of March 23, 1901, hereinbefore referred to.

Instead of doing this, they have so expressed themselves as to leave no serious doubt in our minds of their intention to exempt from license charge of every description, whether for revenue or regulation, the persons as to whom they provide that no "license taxes" shall be imposed. The language of the exception contained in the prohibitory portion of the charter provision is such as to make the meaning very clear. The board of supervisors is empowered "to impose license taxes," etc., "but no license taxes shall be imposed upon any person who, at any fixed place of business in the city and county, sells or manufactures goods, wares or merchandise, *except such as require permits from the board of police commissioners as provided in this charter.*" This clearly shows simply the desire and intent to reserve to the board of supervisors the power to impose license charges for purposes of regulation in certain cases. Limited as it is in its application to businesses for the doing of which the obtaining of a permit from the board of police commissioners is made by the charter a prerequisite, no other conclusion is reasonable. But if appellants' construction of the words "license tax" as used in this provision, be correct, such a reservation would be entirely superfluous and without point, for any business included in the exception would necessarily be one that could be regulated in the exercise of

the police power, and, in the absence of express prohibition, a license charge could be imposed thereon by the board of supervisors as a part or the whole of such regulation, in such amount as might reasonably be deemed necessary for the purposes of regulation. The very specification of those excepted from the exemption provision indicates with clearness the conception of the charter framers of the meaning of the words "license taxes" as used in the exemption provision. It is as though they had in terms provided that "license taxes" may be imposed on those referred to in the exception clause, and on no other persons engaged in selling or manufacturing at a fixed place of busines in the city and county.

Taking the words "license tax" as meaning any license fee or charge imposed as a condition to the doing of business, each of the parts of the provision has its office to perform, and all the parts taken together make a consistent whole. It was evidently desired by the charter framers to make it very clear that no license charges, fee, or tax of any kind should be imposed on any person selling or manufacturing goods, wares, or merchandise at a fixed place of business in the city and county, unless the business to be conducted by such person was one which they considered it necessary to regulate by charter provision requiring the consent of the police commissioners as a condition precedent to the doing of business. This we believe to be the plain effect of the charter provision relied on by respondents. It is stated in their brief and not denied by counsel for appellants, that such was the effect of an opinion rendered by city and county attorney Lane, of San Francisco, just prior to the taking effect of the charter (January, 1900), and that the construction so given by him was acquiesced in until the adoption of the ordinance under consideration.

It cannot now be doubted that the legislative body of a city having a freeholders' charter may be limited by charter provision in the exercise of the police power conferred upon the city by the constitution of the state. In this connection it is only necessary to refer to the opinion in the case of *In re Pfahler,* 150 Cal. 71, 81, [11 L. R. A. (N. S.) 1092, 88 Pac 270], which we think answers every point made in this behalf by learned counsel for appellants. (See, also, *People* v. *Newman,* 96 Cal. 605, [30 Pac. 564].)

The result of our views is that, by reason of provisions con-

tained in the charter of the city and county of San Francisco, the board of supervisors of that city and county is without power to impose a license charge, fee, or tax of any kind, either for purposes of regulation or revenue, upon any person who, at a fixed place of business in the city and county, sells malt or fermented liquors or wines, except such as sell such liquor or wine in less quantity than one quart, or who sell the same to be drunk on the premises. The board has no such power as to those covered by the ordinance before us, viz.: persons who sell in quantities of one quart or more, less than five gallons, when the same is contained in sealed packages, and not to be drunk on the premises where sold. If it be desired to change the law in this regard, such change can be made only by amendment of the charter.

The order appealed from is affirmed.

Sloss, J., Henshaw, J., Melvin, J., Lorigan, J., and Shaw, J.. concurred.