[Crim. No. 1699.   In Bank.—August 6, 1912.]

## In the Matter of the Application of W. F. MONTGOMERY, for a Writ of Habeas Corpus.

Municipal Corporations—City of Los Angeles—Prohibiting Certain Kinds of Business in Residential District—Police Power.—An ordinance of the city of Los Angeles, dividing the territory included in the municipality into industrial and residential districts, and prohibiting the maintenance or conduct within the residential district of "any stone-crusher, rolling-mill, machine-shop, planing-mill, carpet-beating establishment, hay-barn, woodyard, lumber-yard, public laundry or wash-house," is a legitimate and constitutional exercise of the police power of the city.

Id.—Discriminatory Ordinance—Conflict of Evidence.—The courts will not hold such ordinance to be discriminatory by reason of the placing of a "business center" within the lines of the residence district, when the evidence upon that point is conflicting.

Id.—Freeholders' Charter—Enumeration of Occupations That may be Prohibited—Limitation upon General Police Power Conferred by Constitution.—The enumeration in the freeholders' charter of that city (subd. 21 of sec. 2 of art. I), of certain trades, callings, and occupations which may be prohibited, is not a limitation upon the general police power conferred on the city by section 11 of article XI of the constitution, and by a similar section of the charter (subd. 34 of sec. 2 of art. I; Stats. 1911, p. 2064), giving it power "to make and enforce within its limits such local, police, sanitary and other regulations as are deemed expedient to maintain the public peace, protect property, promote the public morals and to preserve the health of its inhabitants."

Id.—Constitutional Grant of Police Power—Exercise cannot be Limited by Charter Provisions.—The legislative body of a city having a freeholders' charter cannot be limited by a charter provision in the exercise of the police power granted to it by the constitution. The city, under such constitutional grant, has the right to exercise the whole police power of the state so far as local regulations are concerned, subject only to the control of general laws.

APPLICATION for a Writ of Habeas Corpus directed to the Chief of Police of the City of Los Angeles.

The facts are stated in the opinion of the court.

E. J. Fleming, and James S. Bennett, for Petitioner.

Guy Eddie, City Prosecutor, for Respondent.

MELVIN, J.—A writ of *habeas corpus* was issued from this court directed to the chief of police of the city of Los Angeles, by whom petitioner was imprisoned by virtue of a warrant issued out of the police court of that city. Petitioner was charged with misdemeanor in that he did "erect, establish, maintain and carry on a lumber-yard at No. 132 West Avenue 61 within the residence district of said city" of Los Angeles. The sole question presented therefore is the sufficiency of ordinance No. 22,798 (New Series) of the city of Los Angeles in its application to petitioner. The contention is, 1. That the ordinance is in excess of the legislative powers of the mayor and city council of the city of Los Angeles under the charter of said city; and 2. That it is in violation of private rights secured by the constitution of the United States and the constitution of the state of California.

The ordinance in question was adopted instead of, and by its terms repealed, ordinance No. 19,563 (New Series). Like that ordinance it declared all of the city except certain enumerated industrial districts, to be a residence district and prohibited the conduct of certain sorts of business therein. Section 2 of the later ordinance differs in no material particular from the identically numbered section of its predecessor. By that section it is declared unlawful for any person, firm, or corporation to "erect, establish, maintain or carry on within the residence district described in said section 1" of said ordinance ". . . any stone-crusher, rolling-mill, machine-shop, planing-mill, carpet-beating establishment, hay-barn, woodyard, lumber-yard, public laundry, or wash-house." In *Ex parte Quong Wo*, 161 Cal. 220, [118 Pac. 714], we had occasion to examine ordinance No. 19,563 (New Series) and to determine that it was a legitimate and constitutional exercise of the police power. What was there said applies with equal force to the portion of the later ordinance now before us, and that case disposes of this petitioner's second objection regarding the constitutionality of said municipal by-law. Petitioner affirms that the ordinance is discriminatory by reason of the placing of a "business center" within the lines of the "residence district." Upon this point the evidence is conflicting. It is shown that certain wooden buildings near petitioner's lumber yard are occupied for business purposes, but the return seeks to show by affidavit and by photographic

exhibits that the lumber-yard is situated in the midst of a section of the city devoted almost exclusively to residences. In any view of the evidence we cannot say that the city council violated the large discretion vested in it with reference to police measures of the kind here considered, and unless such abuse of discretion appears, courts are never inclined to nullify ordinances on the ground of their unfairness. (See *Ex parte Quong* Wo, 161 Cal. 220, [118 Pac. 714], and cases there cited.)

Petitioner's most important contention is that the enumeration in the charter of Los Angeles of certain trades, callings, and occupations which may be prohibited excludes the prohibition by ordinance of others not so enumerated. The charter provides (subd. 21 of sec. 2 of art. I) that the city of Los Angeles, in addition to its other powers, shall have the right "to license, regulate, restrain, suppress, or prohibit any or all laundries, livery and sale stables, cattle and horse corrals, slaughter-houses, butcher-shops, brick-yards, dance halls or academies, public billiard or pool halls or tables, bowling and ten pin alleys, boxing contests, sparring or other exhibitions, shows, circuses, games, and amusements. To license, regulate or prohibit the construction and use of billboards, signs and fences." This petitioner contends, is a limitation upon the general police power conferred by section 11 of article XI of the constitution and by a similar section of the charter (subd. 34 of sec. 2 of art. 1; Stats. 1911, p. 2064) which gives the city power "To make and enforce within its limits such local, police, sanitary, and other regulations as are deemed expedient to maintain the public peace, protect property, promote the public morals and to preserve the health of its inhabitants." By specifying certain occupations that may be prohibited, petitioner maintains, the charter withholds from the city council the power to prohibit any others for, he says, the legislative body of a city having a freeholders' charter may be limited in the exercise of police power by a charter provision. (Citing *Rapp & Son* v. *Kiel,* 159 Cal. 709, [115 Pac. 651], and *In re Pfahler,* 150 Cal. 81, [11 Ann. Cas. 911, 11 L. R. A. (N. S.) 1092, 88 Pac. 270].) We do not think that these cited cases sustain the position of petitioner. In both of them the court was passing upon the place of lodgment of the power of a city and not upon the

limitation of the power itself. In *Rapp & Son* v. *Kiel* the court was discussing a function of the board of supervisors to impose a certain restriction which, under the limitations placed upon the said board, it, as a legislative body was not authorized to enact. *In re Pfahler* also dealt with the place of lodgment of legislative function, but in neither of the opinions in those cases was it held nor implied that a charter may cut down the constitutional power of a city itself. In the Pfahler case we find the court approving the doctrine announced in the opinion in *Odd Fellows' Cemetery Assoc.* v. *City and County of San Francisco*, 140 Cal. 226, [73 Pac. 987], and using the following language with reference to that case: "It was held that nothing contained in the charter could affect the grant made by the constitution, and that the city, under such constitutional grant, had the right to exercise the whole police power of the state so far as local regulations were concerned, subject only to the control of general laws." The provisions of the charter of Los Angeles quoted above are not in terms limitations at all, but enumerations of powers. They are expressly given to the city of Los Angeles "in addition to any other powers now held by or that may hereafter be granted to it under the constitution and laws of the state." If, therefore, the ordinance here considered may be upheld under the general police powers of the city as exercised by its legislative body, it will not fall merely because the city has specific authority under its charter to suppress certain kinds of business. It is to be noted, also, that the ordinance is not one intended to suppress but to regulate specified occupations. As a regulatory measure it comes clearly within the principle of such cases as *Ex parte Quong Wo*, 161 Cal. 220, [118 Pac. 714]; *Ex parte Lacey*, 108 Cal. 326, [49 Am. St. Rep. 93, 38 L. R. A. 640, 41 Pac. 411]; *Grumbach* v. *Lelande*, 154 Cal. 683, [98 Pac. 1059]. While a lumber-yard is not *per se* a nuisance, it takes no extended argument to convince one that in a residence district such a place may be a menace to the safety of the property in its neighborhood for various reasons, among which may be mentioned the inflammable nature of the materials kept there.

Let the writ be discharged and the petitioner remanded.

Angellotti, J., Sloss, J., Shaw, J., and Lorigan, J., concurred.