[Crim. No. 1120. First Appellate District, Division One.—April 11, 1923.]

## In the Matter of the Application of WILLIAM HADELER on Habeas Corpus.

[1] MUNICIPAL CORPORATIONS — SAN FRANCISCO — TAX ON GROCERS — INSPECTION OF PREMISES BY BOARD OF HEALTH—CHARTER—UNAUTHORIZED ORDINANCE.—In view of subdivision 15 of section I, chapter 2, article II of the charter of the city and county of San Francisco, which provides that no license taxes shall be imposed upon any person, who, at any fixed place of business in the city and county, sells or manufactures goods, wares, or merchandise, except such as require permits from the board of police commissioners as provided in the charter, the board of supervisors has no power to impose upon keepers of grocery-stores a license tax, charge, or fee for the purpose of defraying the cost of making an inspection of the premises to determine whether they are sanitary, and an ordinance providing for the imposition of such a fee and its collection by the board of health as a condition to the issuance of a certificate is an unauthorized enactment.

APPLICATION for a Writ of Habeas Corpus to obtain release after conviction of violation of a municipal ordinance. Granted.

The facts are stated in the opinion of the court.

Costello & Costello and E. R. Hoerchner for Petitioner.

George Lull, City Attorney, and Matthew Brady, District Attorney, for Respondent.

RICHARDS, J.—The petitioner herein was convicted of a violation of Ordinance No. 5398, New Series, as amended by Ordinance No. 5490, New Series, of the city and county of San Francisco. The petitioner conducts a grocery-store in the city and county of San Francisco. Under the above-mentioned ordinances any place used for the handling, manufacturing, or sale of foodstuffs in said municipality is required to be inspected by the board of public health to determine whether it is sanitary and in order to do business is required to have issued to its proprietor a certificate by the said

board of health upon such inspection, which certificate must be annually renewed. Section 2 of the amended ordinance provides that "for the purpose of defraying the cost of making such inspection and issuing the certificate provided for in this ordinance, a fee of five dollars is hereby imposed and shall be collected by the Board of Health prior to the issuance of such certificate." The petitioner having failed and refused to pay said inspection fee, was arrested, tried, and convicted of a violation of said ordinances as above stated. The sole question presented upon his application for this writ is as to the power of the board of supervisors of the city and county of San Francisco to impose upon those who engage in the grocery business the license tax, fee, or charge provided for in these ordinances, and which the petitioner has refused to pay.

In support of his contention herein the petitioner directs our attention to the case of *Rapp & Son* v. *Kiel,* 159 Cal. 702 [115 Pac. 651], wherein the provisions of the charter of the city and county of San Francisco relating to the power of the board of supervisors in the matter of the imposition of license fees and taxes were the subject of review. Subdivision 15 of section 1, chapter 2, article II of said charter provides that the board of supervisors shall have power "to impose license taxes and to provide for the collection thereof; but no license taxes shall be imposed upon any person, who, at any fixed place of business in the City and County, sells or manufactures goods, wares or merchandise, except such as require permits from the Board of Police Commissioners as provided in this Charter." It is conceded that the keepers of grocery-stores are not within the enumerated list of persons who are required to obtain permits from the board of police commissioners under the provisions of chapter 3 or of section 7 of chapter 4 of article VIII of said charter, and hence do not come within the exception in the above-quoted subdivision. The case of *Rapp & Son* v. *Kiel, supra,* is in that respect parallel to the case at bar. In construing the meaning to be given to the phrase "license tax" as used in said subdivision of the charter, the supreme court held that said phrase as used therein included both regulatory and revenue charges, and further held that it was the intention of the charter makers in the adoption of the foregoing subdivision "to make it very clear that no

license charges, fee, or tax of any kind should be imposed on any person selling or manufacturing goods, wares or merchandise at a fixed place of business in the city and county, unless the business to be conducted by such person was one that they considered it necessary to regulate by charter provisions, requiring the consent of the police commissioners as a condition precedent to the doing of the business." Under this interpretation of the scope and meaning of the foregoing subdivision of the charter we are constrained to hold that the board of supervisors of the city and county of San Francisco have no power to impose the license charge or fee upon the petitioner as a condition of engaging in the grocery business in said municipality and that said ordinances, in so far as they attempt so to do, must be held to be void. The respondent, however, makes the contention that notwithstanding the direct inhibition of subdivision 15 of said charter above set forth, the board of supervisors had power to adopt the ordinances in question under and by virtue of section 11 of article XI of the state constitution, which provides that "any county, city, town or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws." In support of this contention our attention is called to the case of *Odd Fellows Cemetery Assn.* v. *San Francisco,* 140 Cal. 226 [73 Pac. 987]. That was a case wherein the question arose as to the power of the board of supervisors of the city and county of San Francisco to pass an ordinance prohibiting the interment of dead bodies within the limits of said municipality, and the point at issue was as to whether the board of supervisors possessed such power in the absence of an express charter provision granting such power to it; and in passing upon this question the supreme court held that under and by virtue of the foregoing clause in the state constitution the board of supervisors had been invested, by virtue of its police powers, with power to pass the ordinance in question in that case.

Our attention is further directed by the respondent to the case of *In re Pfahler,* 150 Cal. 71 [11 Ann. Cas. 911, 11 L. R. A. (N. S.) 1092, 88 Pac. 270], in which the question arose as to the power of the city of Los Angeles to adopt and enforce an initiative ordinance prohibiting, except

within certain defined limits, the killing or slaughtering of animals within said city, the flesh of which was to be sold or offered for sale, or eaten. It was contended that inasmuch as the city charter had invested the council with the legislative power of the city and had in so doing enumerated certain matters as the proper subjects of police regulation, it had by so doing limited its power through initiative legislation to deal with the subject covered by the initiative ordinance under review. The supreme court, however, held that the city possessed, under the direct grant of the state constitution above referred to, the full power to pass such legislation, notwithstanding the limitations of the city charter and in so doing approved and applied the doctrine laid down in the case of *Odd Fellows Cemetery Assn.* v. *City and County of San Francisco, supra.* Both of these decisions of the supreme court were prior to its decision in the case of *Rapp & Son* v. *Kiel, supra,* and in deciding said last-named case the court makes no reference to the Odd Fellows Cemetery case and only a passing and somewhat obscure reference to the Pfahler case. In the later case, however, of *In re Montgomery,* 163 Cal. 457 [Ann. Cas. 1914A, 130, 125 Pac. 1070], the supreme court gave its consideration to all three of these prior cases and undertook to differentiate between them. In the last-cited case the question arose as to the power of the city council of Los Angeles to pass and enforce an ordinance prohibiting the erection and maintenance of a lumber-yard within the residence district of said city and the contention of the petitioner therein was that the enumeration in the charter of Los Angeles of certain trades, callings, and occupations, which may be prohibited by ordinances of the city council constituted a limitation upon the power of said legislative body to pass ordinances prohibiting or restricting the location within said city of any other classes of business than those embraced within such enumeration. It was argued that the makers of the charter, by specifying certain occupations which might be prohibited or restricted, withheld from the city council the power to prohibit any others not within such specification. The supreme court, however, held that under the constitutional provision above referred to, the legislative body of said city was not limited in the exercise of its police power to the enumeration contained in said charter.

In arriving at this conclusion the court reviewed and distinguished its foregoing decisions and in so doing pointed out that in the case of *Rapp & Son v. Kiel, supra,* the court was passing upon the place of lodgment of the power of the city and not upon the limitation of the power itself, and was discussing the power of the board of supervisors to impose a certain restriction which under the limitations placed upon said board as a legislative body it was not authorized to enact. In commenting upon the Pfahler case, *supra,* and upon its approval therein of the Odd Fellows Cemetery Assn. case, the court called attention to the fact that it was not therein deciding that the charter of a city might not by express provision limit the powers which its legislative body might exercise, but was only intending to decide that a charter provision could not limit or cut down the constitutional power of a city itself to enact police regulations under the direct grant of the state constitution. It will thus be seen that the case of *Rapp & Son v. Kiel, supra,* was shown to be not inconsistent either with the two earlier decisions of said court or with its ruling in the Montgomery case. [1] It must therefore be held that the case of *Rapp & Son v. Kiel, supra,* remains as a controlling authority, binding upon this court and as holding that in the face of the express prohibition contained in subdivision 15 of section 1, chapter 2, article II of the San Francisco charter, the board of supervisors was not invested with, but, on the contrary, was expressly denied, the power to pass ordinances imposing license taxes, fees, or charges for purposes of either revenue or regulation, upon those classes of business not coming within the exception provided for in said subdivision.

It follows that the application of the petitioner must be granted and the petitioner discharged, and it is so ordered.

St. Sure, J., and Tyler, P. J., concurred.