[Crim. No. 1760. In Bank.—May 15, 1913.]

Ex Parte J. C. HADACHECK, on Habeas Corpus.

MUNICIPAL CORPORATION — POLICE POWER — RESTRICTION ON CERTAIN KINDS OF OCCUPATIONS—LIMITATION TO CERTAIN DISTRICT OF CITY. The power of a municipality to regulate the carrying on of certain lawful occupations therein includes the power to confine the carrying on of the same to certain limits, whenever such restrictions may reasonably be found necessary to subserve the ends for which the police power exists, viz., to protect the public health, morals, safety, and comfort.

ID.—LEGISLATIVE DETERMINATION—REVIEW BY COURTS.—It is primarily for the legislative body clothed with this power to determine when such regulations are essential, and its determination in this regard, in view of its better knowledge of all the circumstances and the presumption that it is acting with a due regard for the rights of all parties, will not be disturbed in the courts, unless it can plainly be seen that the regulation has no relation to the ends above stated, but is a clear invasion of personal or property rights under the guise of police regulation.

ID.—RESTRICTING BUSINESS OF BRICKMAKING TO SPECIFIED DISTRICT—BUSINESS NOT A NUISANCE.—The city of Los Angeles has authority, in the exercise of its police power, to regulate the business of brickmaking by restricting the location within the city limits in which it may be followed. It is immaterial to the right of regulation that the conduct of such business is not a nuisance.

ID.—DIMINUTION OF VALUE OF INVESTMENTS IN PROHIBITED BUSINESS.—The right of the legislature, in the exercise of the police power, to regulate or, in proper cases, to prohibit the conduct of a given business, is not limited by the fact that the value of investments made in the business prior to any legislative action will be greatly diminished.

ID.—RESTRICTIONS MUST BE REASONABLE.—The power to regulate the use of property or the conduct of a business is not arbitrary. The restriction must bear a reasonable relation to some legitimate purpose within the purview of the police power.

ID.—PROOF OF REASONABLENESS OF RESTRICTION.—The reasonableness of a municipal restriction prohibiting the carrying on of the business of manufacturing brick within a specified portion of the city is sufficiently established, when, in addition to the presumptions in favor of the propriety of the legislative determination, there is evidence tending to show that the region in question had become primarily a residential section, and that the occupants of neighboring dwellings were seriously discommoded by the operations of the business.

ID.—GOOD FAITH OF CITY COUNCIL IN ENACTING ORDINANCE.—A claim that such ordinance was not enacted in good faith as a police measure, but was designed to discriminate against the proprietors of two brickyards within the limited district, is not supported by a mere allegation that the boundaries of the district were fixed by the city council "for the sole and specific purpose of prohibiting and suppressing the operation and maintenance of the brickmaking business" of such persons.

ID.—FAILURE TO APPLY RESTRICTION TO OTHER DISTRICTS OF CITY.—Such a restriction, limited to a particular district, is not invalidated

CLXV Cal.—27

by the fact that the maintenance of such yards was not prohibited in other districts of the city where their existence was equally as injurious to their neighbors.

APPLICATION for a Writ of Habeas Corpus directed to the Chief of Police of the City of Los Angeles.

The facts are stated in the opinion of the court.

G. C. De Garmo, and Emmet H. Wilson, for Petitioner.

Ray E. Nimmo, for Respondent.

SLOSS, J.—A writ of *habeas corpus* was issued by this court on the petition of J. C. Hadacheck, who alleged that he was held in custody under a complaint charging him with the violation of an ordinance of the city of Los Angeles, adopted in April, 1910, and designated No. 19,989, new series. The validity of the ordinance presents the sole question to be here determined.

By the terms of the enactment, it was declared to be unlawful for any person, firm, or corporation to establish, conduct, operate, or maintain, or to cause or permit to be established, operated or maintained, any brickyard or brick kiln, or any establishment, factory or place for the manufacture or burning of brick, whether established prior or subsequent to the passage of the ordinance, within a described district or portion of the city of Los Angeles. A violation of any of the provisions of the ordinance was declared to be a misdemeanor. The district to which the prohibition was applied contains about three square miles. The petitioner is the owner of a tract of land containing eight acres, more or less, within the district described in the ordinance. He acquired his land in 1902, before the territory to which the ordinance was directed had been annexed to the city of Los Angeles. His land contains valuable deposits of clay suitable for the manufacture of brick, and he has, during the entire period of his ownership, used the land for brickmaking, and has erected thereon kilns, machinery, and buildings necessary for such manufacture. The land, as he alleges, is far more valuable for brickmaking than for any other purpose.

In view of the recent decisions of this court in *Ex parte Quong Wo*, 161 Cal. 220, [118 Pac. 714], and *Ex parte Montgomery*, 163 Cal. 457, [125 Pac. 1070], it cannot be necessary to enlarge upon the general question of the right of a municipal legislature to enact ordinances like the one before us. "There can be no question," says the court in *Ex parte Quong Wo*, "that the power to regulate the carrying on of certain lawful occupations in a city includes the power to confine the carrying on of the same to certain limits, whenever such restrictions may reasonably be found necessary to subserve the ends for which the police power exists, viz., to protect the public health, morals, safety, and comfort. It is, of course, primarily for the legislative body clothed with this power to determine when such regulations are essential, and its determination in this regard, in view of its better knowledge of all the circumstances and the presumption that it is acting with a due regard for the rights of all parties, will not be disturbed in the courts, unless it can plainly be seen that the regulation has no relation to the ends above stated, but is a clear invasion of personal or property rights under the guise of police regulation." And these views are supported by a multitude of decisions, some of which are cited in the opinion from which we have quoted.

In the Quong Wo case, the business of a public laundry was held to be "of such a nature that it may be confined, in the lawful exercise of the police power, within defined limits in a city or town." The same rule was applied in *Ex parte Montgomery* to a lumber yard. It is not to be doubted that establishments for the burning of brick fall equally within the class of occupations which may properly be regulated by restricting the location in which they may be followed. It is immaterial to the particular point under discussion that the conduct of a brickyard is not a nuisance *per se*. "The police power granted by the constitution is not restricted to the suppression of nuisances. It includes the regulation of the conduct of business, or the use of property, to the end that the public health or morals may not be impaired or endangered." (*Laurel Hill Cemetery* v. *City and County of San Francisco*, 152 Cal. 464, 474, [14 Ann. Cas. 1080, 27 L. R. A. (N. S.) 260, 93 Pac. 70] ; *Ex parte Lacey*, 108 Cal. 326, [49 Am. St. Rep. 93, 38 L. R. A. 640, 41 Pac.

411]; *Odd Fellows' Cem. Assoc.* v. *City and County of San Francisco,* 140 Cal. 226, [73 Pac. 987]; *Ex parte Quong Wo,* 161 Cal. 220, [118 Pac. 714].) The burning of brick is a trade which may, when conducted in close proximity to dwelling-houses, be so offensive to those residing in the vicinity as to constitute a nuisance. (*Campbell* v. *Seaman,* 63 N. Y. 568 and cases cited; *Powell* v. *Brockfield P. B. Co.,* 104 Mo. App. 713, [78 S. W. 648], 29 Cyc. 1168.) This is true of all trades which, in their operation, involve the discharge of smoke or offensive odors into the surrounding atmosphere. (*Catlin* v. *Valentine,* 9 Paige 575, [38 Am. Dec. 567]; *Davis* v. *Lambertson,* 56 Barb. 480; *Whitney* v. *Bartholomew,* 21 Conn. 213; *Cooper* v. *Randall,* 53 Ill. 24.) The plaintiff's business, therefore, is a perfect example of the kind of occupation which may properly be confined by the legislative authority to locations in which its conduct will not be injurious to others. Counsel for petitioner rely strongly on *Ex parte Kelso,* 147 Cal. 609, [109 Am. St. Rep. 178, 2 L. R. A. (N. S.) 796, 82 Pac. 241], where this court declared invalid an ordinance absolutely prohibiting the maintenance or operation of a rock or stone quarry within a certain portion of the city and county of San Francisco. The ground of the decision was that the removal of rock from land is an operation that may be rendered entirely innocuous by proper regulation prescribing the manner of doing the work, and that therefore a total prohibition was an arbitrary and unreasonable invasion of private right. But the burning of brick, in the course of which more or less smoke is necessarily generated and released, is a different matter. Whether or not this trade, however strictly the manner of its conduct may be regulated, can be pursued at all in a residential district without causing undue annoyance to persons living in the district, is certainly a question upon which reasonable minds may differ. If this be so, the propriety of entirely prohibiting the occupation within such districts is one for the legislative determination. The courts will not substitute their judgment upon this issue for that of the legislative body.

The right of the legislature, in the exercise of the police power, to regulate or, in proper cases, to prohibit the conduct of a given business, is not limited by the fact that the value of investments made in the business prior to any legislative

action will be greatly diminished. (*Mugler* v. *Kansas*, 123 U. S. 623, [31 L. Ed. 205, 8 Sup. Ct. Rep. 273]; *Grumbach* v. *Lelande,* 154 Cal. 684, [98 Pac. 159]; *Ex parte Quong Wo,* 161 Cal. 220, [118 Pac. 714].) A business which, when established, was entirely unobjectionable, may, by the growth of population in the vicinity, become a source of danger to the health and comfort of those who have come to be occupants of the surrounding territory. If the legislature should then prohibit its further conduct, the proprietor can base no complaint upon the mere fact that he has been carrying on the trade in that locality for a long period.

The power to regulate the use of property or the conduct of a business is, of course, not arbitrary. The restriction must bear a reasonable relation to some legitimate purpose within the purview of the police power. The petition in this case contains allegations designed to show that the district affected by the ordinance complained of was of such a character that the maintenance of brickyards therein could not affect the health or comfort of any one. But the respondent has added to his return various affidavits tending to show that the region surrounding petitioner's brickyard has become primarily a residential section, and that the occupants of neighboring dwellings are seriously discommoded by the petitioner's operations. The evidence thus before us, when taken in connection with the presumptions in favor of the propriety of the legislative determination, is certainly sufficient to overcome any contention that the prohibition was a mere arbitrary invasion of private right, not supported by any tenable belief that the continuance of the business in its present location was so detrimental to the interests of others as to require suppression.

Nor does the petition, read in connection with the showing made by and with the return, support a claim that the ordinance was not enacted in good faith as a police measure, but was designed to discriminate against the plaintiff and the proprietor of another brickyard within the limited district. It is alleged that the boundaries of the district were fixed by the city council "for the sole and specific purpose of prohibiting and suppressing the operation and maintenance of the brickmaking business of your petitioner," and of the other brick manufacturer above mentioned. But if such prohibition

and suppression were proper for the protection of the objects committed to the legislative care, it was the duty of the council to do what it did. The allegation cannot be construed to mean that the purpose of suppressing petitioner's plant was actuated by any motive of injuring the petitioner as an individual. We must assume that the council aimed to prohibit his business in its existing location because it deemed the continuance of the business there to be detrimental to the welfare of others.

The petitioner avers, too, that in other districts of the city there are brickyards which are quite as injurious to their neighbors as is the petitioner's establishment, and that the council has not prohibited the maintenance of such yards in these other districts. But this presents a question which is peculiarly for the determination of the legislative body. (*Ex parte Quong Wo*, 161 Cal. 220, [118 Pac. 714].) Granted that there are reasons justifying the prohibition of the business within the area described in the ordinance, the city council, and not this court, is the body charged with the duty of deciding whether the conditions in other parts of the city require like prohibition. Without regard to the fact, shown in the return, that brickmaking is prohibited in a district other than that here involved, we are not authorized to enter into an inquiry with a view of determining whether, in our opinion, the prohibition complained of might not, with good reason, have been made more extensive. There is nothing in connection with the averments on this point to sustain the claim that the failure to apply the prohibition to other districts was due to any intent to discriminate against the petitioner. All that is made to appear is that the council did not share petitioner's opinion that brickmaking in certain other parts of the city was as objectionable as in the district in which petitioner had his establishment.

The case, therefore, is in no way analogous to those in which an ordinance, although, perhaps, fair upon its face, has been set aside because of a showing that it was administered in such a manner as to discriminate unjustly against a particular race (*Yick Wo* v. *Hopkins*, 118 U. S. 356, [30 L. Ed. 220, 6 Sup. Ct. Rep. 1064]), or because the facts surrounding the adoption of the ordinance showed that its real purpose was not to protect the public welfare but to deprive a specific

individual of the right to use his property in a lawful way. (*Dobbins* v. *Los Angeles*, 195 U. S. 223, [49 L. Ed. 169, 25 Sup. Ct. Rep. 118].) The facts before us would certainly not justify the conclusion that the ordinance here in question was designed, in either its adoption or its enforcement, to be anything but what it purported to be, viz., a legitimate regulation, operating alike upon all who come within its terms.

The writ is discharged and the petitioner remanded to the custody of the chief of police of the city of Los Angeles.

Angellotti, J., Shaw, J., Henshaw, J., Lorigan, J., and Melvin, J., concurred.