STANDARD OIL COMPANY, APPELLANT, v. CITY OF KEARNEY ET AL., APPELLEES.

FILED JULY 15, 1921. No. 21326.

1. **Municipal Corporations: POLICE REGULATIONS: REVIEW BY COURTS.** In the exercise of police power delegated to a city, it is generally for the municipal authorities to determine what rules, regulations and ordinances are required for the health, comfort and safety of the people, but their action is not final and is subject to the

scrutiny of the courts.

2. ———: INVALIDITY OF ORDINANCE: EVIDENCE. To overturn a city ordinance as being arbitrary, unreasonable or discriminatory, the evidence of such facts should be clear and satisfactory.

3. ———: ———. In the light of the evidence, the ordinance set out in the opinion is *held* void as being an arbitrary, unreasonable and discriminatory exercise of the police power.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed, with directions.*

*Pratt & Hamer* and *W. H. Herdman,* for appellant.

*E. P. McDermott, contra.*

Heard before MORRISSEY, C.J., DAY, DEAN, FLANSBURG, LETTON and ROSE, JJ.

DAY, J.

The only question involved in this case is the validity of a certain ordinance of the city of Kearney, Nebraska.

Plaintiff, who was the owner of certain lots abutting upon Central avenue at Twenty-fourth street in the city of Kearney, had commenced to erect thereon a filling station for the purpose of selling on the premises gasoline and lubricating oil to the users of motor vehicles. When the city council of defendant city learned of the character of the improvement the plaintiff intended to make and the nature of the business it proposed to conduct on the premises, the council very promptly passed the ordinance in question. Section 1 provides: "That it shall be unlawful for any person or persons, firm, or corporation to erect or construct upon any lot, piece of lot, or parcel of land, a filling station wherein motor-propelled vehicles are run in for the purpose of receiving gasoline and oils, between Eighteenth and Thirty-first streets on Central avenue, in the city of Kearney, Nebraska." Section 2 provides a penalty for a violation of the ordinance.

Acting under authority of this ordinance, the municipal authorities were proceeding to stop the further progress of the work on the filling station when this action was

commenced. By this action the plaintiff sought an injunction restraining the municipal authorities from interfering with it in the construction of the improvement upon the ground that the ordinance is unreasonable, discriminatory, and an illegal invasion of its property rights. The trial court found the issues in favor of the defendants, and dismissed the plaintiff's cause of action. From this judgment plaintiff appeals.

It is conceded that the legislature has, by section 4862, Rev. St. 1913, delegated to the municipal authorities of cities of the class of defendant city the power to enact all needful ordinances, rules, and regulations for maintaining the peace, good government, and general welfare of such cities. It is manifest that the council in passing the ordinance in question was acting under the "general welfare" clause of the power delegated to it by the legislature. Generally speaking, it is within the right of municipal legislative authority, acting under the "general welfare" clause, to determine what ordinances are required to protect and secure the public health, comfort, and safety, but it may not, under the guise of such power, enact ordinances which are unreasonable, or discriminatory, or an invasion of constitutional rights.

In *Peterson v. State*, 79 Neb. 132, it was held: "The determination of the question whether an ordinance is reasonably necessary for the protection of life and property within the city is committed in the first instance to the municipal authorities, and, when they have acted and passed an ordinance, it is presumptively valid, and the courts will not interfere with its enforcement until the unreasonableness or want of necessity of such measure is made to appear by satisfactory evidence." The same principle is announced in *State v. Withnell*, 91 Neb. 101. Whether an ordinance of this character is a proper exercise of power becomes, therefore, in its last analysis, a question for the courts to decide, and when it appears from all of the facts and circumstances to the satisfaction of the court that an ordinance is unreasonable or dis-

criminatory, or an invasion of constitutional rights, it is the duty of the courts to declare such ordinance void.

With this general principle in mind, we proceed to examine the facts and circumstances existing at the time the ordinance was passed, and the mischief proposed to be remedied thereby. The record shows that the plaintiff was proceeding to erect upon its lots abutting on Central avenue and Twenty-fourth street a filling station for the purpose of vending oils and gasoline to the users of motor vehicles, when stopped by the defendants. The general plan of the improvement contemplated the construction of a small one-story cement and concrete office building, standing well back from the two streets, and having a wide semicircular driveway extending from Central avenue to Twenty-fourth street across the plaintiff's premises. The plan was that a customer by driving across the sidewalk could enter upon the premises from either of the two streets; it being the intention that a customer who entered the premises from Central avenue, after having his wants supplied, could make his exit on Twenty-fourth street, and *vice versa*. Pumps were to be stationed along the driveway in the open air, well back from the streets, by means of which customers were to be supplied with gasoline. It was the plan to store the gasoline upon the premises in large steel tanks specially designed for the purpose, and buried in the ground, while the oil was to be stored in metal cans such as are generally used for that purpose. The building itself fully complied with the fire protection and building ordinances of the city, and the proposed manner of storing the gasoline and oils on the premises was not in violation of any ordinance of the city, or any law of the state.

It further appears that Central avenue is the principal business street in the city, and that the plaintiff's property is one of the important corners along that street. For about four blocks south of the proposed improvement, the business consists mostly of retail stores in buildings of one and two stories. Along the street are a few very

valuable improvements, such as the federal post-office building, a church, a hotel, and residences.

It will be noted that the ordinance forbids the construction of a "filling station" wherein motor-propelled vehicles are run in for the purpose of receiving gasoline and oil. Just what the council may have intended by the term "filling station" is not entirely free from doubt. It would seem, however, that there could be an equipment which would come within the general meaning of that term, where no building was employed, and that, therefore, the building which the plaintiff proposed to construct was not the objectionable feature of the improvement. The ordinance, as we view it, does not prevent the storing of oils and gasoline on the premises within the restricted district, and selling them to users of motor vehicles at the curb of the street. In fact, it is shown that within a few doors from the plaintiff's premises, and within the district, gasoline is being sold to users from a pump at the curb; the gasoline being stored in a large tank beneath the sidewalk. If the ordinance was really intended as a good-faith fire protection measure, it would seem that it would have been more general in its application, both as respects the territory in which it operated and the persons to whom it applied. It is difficult to see how there would be more danger to the public from selling gasoline and oil from a pump on the premises, than from selling the same commodities from a pump at the curb of the street; both being in the open air. Besides this, the ordinance by its terms operates on Central avenue only, and from the conditions as shown by the photographs in evidence there would be as much danger from such a business conducted just off Central avenue as along that street.

In further support of the ordinance, it is argued that the crossing of the sidewalk by motor vehicles would unwarrantably interfere with the use thereof by pedestrians. The record does not show the approximate number of pedestrians using the sidewalk, nor the extent of the in-

terference which the motor vehicles would entail. The court will, however, take judicial notice of the fact that the population of defendant city is less than 8,000, and from the circumstances in evidence, as shown by the photographs, we are convinced that the slight inconvenience to pedestrians by motor vehicles crossing the sidewalk is not of sufficient magnitude to justify the ordinance on that ground. The automobile as a business and pleasure vehicle has come to stay, and the rights of users, who constitute a considerable part of the public, must also be considered in determining the validity of ordinances of this nature. Besides this, within one block from the plaintiff's premises, and within the district, is a public garage, access to which is had across the sidewalk. It is conceded that the ordinance does not prohibit crossing the sidewalk to enter the garage. It is also claimed that the noise of the honking of horns and the running of the engines would be a nuisance to the other users of the street. The noise, however, is only incidental to and not a necessary part of the proposed business. If the protection of the public from noise was the purpose sought to be attained, it would seem that it could be easily controlled by proper ordinances going directly to that subject.

Without extending the argument further, we are satisfied from a consideration of the entire record that the ordinance cannot be sustained. While there are some phases of it which upon first impression appear to be within the domain of the proper exercise of the police power of the municipality, yet when considered in connection with the facts and circumstances as shown by the record it becomes apparent that it is an unreasonable, arbitrary, and discriminatory exercise of power. We think the real reason for the ordinance is set forth in the defendant's answer wherein it is charged that the construction of an oil-filling station on the principal street of the city would be an "everlasting eyesore and disgrace." While great latitude must be given to municipalities in the matter of

the exercise of police power, it must not be carried to the extent that it is unreasonable, arbitrary, or discriminatory.

From what has been said, it follows that the trial court should have granted the relief prayed. The judgment of the district court is reversed and the cause remanded, with directions to enter a decree granting the injunction prayed.

REVERSED.

DEAN, J., dissenting.

Under the facts and the law it seems that the judgment should be affirmed. The ordinance prohibits the erection, on a certain designated part of a certain street, of all oil-filling stations of a certain class, namely, those "wherein motor-propelled vehicles are run in for the purpose of receiving gasoline and oils."

There is a stipulation in the record wherein, among other things, substantially these material facts appear: Immediately east, and across Central avenue, from the proposed site of the oil-filling station is located the United States post-office, a two-story marble building erected at a cost of about $150,000, and also an apartment house. One block away from plaintiff's lots is located the three-story 100-room Midway hotel, and just across the street therefrom, and one block from plaintiff's lots, is the Christian church, and east and north of that church is a residence district. About a half block west of plaintiff's lots is a Catholic church, and connected therewith is a parochial school which is open and in continuous session nine months in the year. A block south of the Catholic church and school is the Presbyterian church, and across the street east of the Presbyterian church is the Christian Science church. Both sides of the four blocks that are directly south of plaintiff's lots are practically all built up with business houses. Central avenue, whereon the proposed oil-filling station is to be permanently located, is one of Kearney's principal business streets and is one of

the main traveled routes from the business center on a paved street that leads to the State Teachers college.  On the east and south sides of the block in which are situated plaintiff's lots the sidewalks are about 20 feet wide.

It is into the midst of such an environment that there has been permanently located, almost under the eaves of a $150,000 federal building, by a judgment of this court, a noise-producing oil-filling station that is to be used, as we are informed by plaintiff's brief, "in said business of vending oils, grease, and gasoline." The environment of the new structure will, as the stipulation shows, consist of a group of four leading churches, a church school, an apartment house, a large hotel, and the federal building; a residence section of the city being on one side and the business center on the other.  The oil station is permanently established over the protest of the city council, and in violation of an ordinance, adopted under the police power, and contrary to a judgment of the district court pronounced by a judge who has resided in Kearney more than 30 years, and who has been a district judge for almost 20 years.

One of Kearney's leading citizens, who lives directly across the street from a "two-pump" oil-filling station, testified, in substance, that on Saturday evenings, from 5 o'clock until midnight, and on Sunday afternoons and evenings and on holidays, the station does a very large business, and at such times from four to six cars stand and honk and wait, all clamoring to be served at one time, and that to add to the confusion about half of the cars while waiting permit their engines to run, so that the noise interferes with ordinary conversation on his porch and injuriously affects the health of his family. He further testified that the traffic on the street was congested by large motor trucks and mule trucks backing up to the curb to fill the tank of the station with gasoline almost every evening, and that it was further obstructed by from three to six cars standing at the curb in the evenings waiting to have air pumped into the tires.

He said his knowledge was confined to the hours he named as he was not at home very much during the day throughout the week. No evidence was offered by plaintiff on the question of noise, other than that of an employee of plaintiff who testified that their men were instructed to ask car drivers to stop their engines while the tank was being filled. It is, however, suggested in plaintiff's brief that it was the customers, and not the plaintiff, that created the noise and the confusion of which complaint is made. But that suggestion does not meet the objection. In view of the evidence it is perhaps well that the federal court has not yet begun to hold its sessions on the second floor of the federal building.

In its argument plaintiff contends that the ordinance is discriminatory because two "gasoline curb pumps" have been installed on the street in question. The contention is not sound. There is a vast difference between a "gasoline curb pump," a temporary and transitory contrivance, installed before the passage of the ordinance in question, and a permanent "oil-filling station," to be used for selling "oils, grease, and gasoline." They are not in the same class, nor can a comparison properly be drawn between a "gasoline curb pump" that was first brought into use by the pioneer oil sellers, and now almost obsolete, and a pretentious, modern and permanent "gas-filling station," the last word in architectural expression and design of the modern oil vender.

The majority opinion points out that the automobile, that indispensable adjunct of modern and social life, has come to stay; likewise the pedestrian. And some inalienable rights remain to him. Among these is the right freely to walk in peace and in safety on either side of a public street that he may choose. It is obvious that an oil-filling station, located on a street corner in the business center, no matter how attractive, when newly built, in architectural design and appearance, with cars darting in and darting out, across a greasy sidewalk, adds to the peril of the passing pedestrian, of whatever age or sex.

But in its brief plaintiff makes this argument in extenuation of its persistent and unwelcome intrusion. It says: "The slight inconvenience to pedestrians using the sidewalk on the same side of the street, although they could use the one on the opposite side, must as a public necessity be submitted to." Doubtless the same argument, upon which comment may well be spared, was advanced in the district court and was noted by the trial judge.

It has often been said that the police power is to the state what self-protection is to the citizen. It is for the city council then, under that beneficent power, reasonably to determine in the first instance in what district certain occupations, and the erection of certain structures, shall be prohibited. Under the police power the city council may determine too whether the perils of automobile traffic to pedestrians upon the main street intersections, shall be diminished and the safety of the citizens enhanced, by preventing the establishment on its prominent street corners of such oil-filling stations and at such locations as the present case contemplates. And if complaint is made, as here made, and notwithstanding we must try the case here *de novo,* we have held, in the past, that the judgment of the district court, in an equity case, should be given great weight by this court when sitting as a court of review. And this case is not an exception. The question is: Has the council been unreasonable in its exercise of the police power? I submit that it does not clearly so appear. I fear that the fact has been overlooked that a reasonable exercise of the police power inheres in the city council.

A citizen should not be permitted to so use his property as to thereby create a nuisance, nor to so use it that it will become a menace to the personal and physical safety of others. Plainly speaking, plaintiff has been given permission to do both. In support of the views expressed herein these authorities are cited: *Ex parte Wolf,* 14 Neb. 24; *Peterson v. State,* 79 Neb. 132; *In re Anderson,* 69 Neb. 686; *State v. Withnell,* 91 Neb. 101;

2 McQuillin, Municipal Corporations, sec. 732, and volume 3, secs. 890-924.

For the reasons herein stated, I respectfully dissent from the opinion of the majority of the court.