[No. 17730.   Department One.   May 15, 1923.]

LEO M. DORNBERG, *Respondent*, v. THE CITY OF SPOKANE
*et al., Appellants.*[1]

MUNICIPAL CORPORATIONS (320)—ORDINANCES—REGULATION OF OC-
CUPATIONS—AUCTIONEERS—REASONABLENESS.   An ordinance prohibit-
ing all sales at auction within a prescribed portion of the business
district of the city is unreasonable and void, as it can have no rela-
tion to health, comfort, morals or welfare.

Appeal from a judgment of the superior court for
Spokane county, Huneke, J., entered September 9,
1922, upon findings in favor of the plaintiff, in an
action for an injunction, tried to the court.   Affirmed.

*J. M. Geraghty* and *Alex. M. Winston,* for appellants.
*S. Edelstein,* for respondent.

BRIDGES, J.—The only question in this case is the
validity of § 11, of ordinance number C 1590, as amend-
ed by ordinance No. C 2093, of the city of Spokane,
which ordinance is with reference to the business of
auctioneering.   Section 11 reads in part as follows:

"It shall be unlawful for any person, firm, company
or corporation, to sell or expose for sale by way of
public vendue or auction, except under and by virtue
of legal process, any property, real or personal, within
the following described portion of the city of Spokane,
to wit: (here follows a description of a portion of the
business district of Spokane) . . . No auctioneer's
license issued in pursuance of this ordinance shall be
deemed a permit to sell at public vendue or auction
within said prohibited territory."

Other sections of the ordinance provide for a license
to be issued to those desiring to sell by auction, and
prescribes the qualifications of those entitled thereto.

[1]Reported in 215 Pac. 518.

Other sections control in great detail the business of auctioneering.

The respondent brought this suit to enjoin the officers of the city of Spokane from enforcing against him the ordinance in question, and particularly § 11, a part of which we have above quoted. The testimony has not been brought here, and we are required to rely upon the court's findings (to which no exceptions have been taken) for the facts of the case. From these it appears that the respondent had been engaged in the retail jewelry business in Spokane for a number of years, and that his store was located within the prohibited area, as described in § 11, above; that, for certain reasons, he was forced to go out of business and to vacate the building which he occupied, within a definite short period, and that he was desirous of having an auction sale for the purpose of aiding him in disposing of his stock on hand; that he was not a regular auctioneer and did not carry on, and had no intention of carrying on, that business; that he had obtained the general auctioneer's license provided for in the ordinance in question, but that the city officials were threatening to arrest him if he had an auction within the prohibited district. The trial court held that the quoted portion of § 11 of the ordinance was unreasonable and therefore invalid, and enjoined the city officials from enforcing it against the respondent.

In considering this question, it may be advisable to keep in mind certain principles of law which are generally recognized by the authorities, such as that the selling of property by auction is a lawful business; that, while such business may be regulated, being lawful, it cannot be entirely prohibited; that, while the courts will ordinarily presume that the municipal officials, in enacting such an ordinance as this, acted

reasonably, and that the ordinance has some relation to the public health, safety, convenience or welfare, yet, in the final analysis, the reasonableness of such an ordinance is a judicial question, and that the courts will, without hesitancy, declare invalid an ordinance which appears from the testimony or upon its face to be clearly unreasonable.

No attack is here made upon those provisions of the ordinance which require one desiring to sell property at auction to obtain a license and pay a certain consideration therefor, and which determine the character of the persons to whom such licenses will issue, and which regulate auctions in so far as they are affected by questions of honorable dealing, and other similar provisions. It is here simply contended that the provision of the ordinance which absolutely forbids any public auction within a certain district of the city is unreasonable.

In the case of *Detamore v. Hindley*, 83 Wash. 322, 145 Pac. 462, we held that the exercise of the police power, ordinarily dwelling only in the state, had been delegated to municipalities within the state. Consequently, there can be no question but what the city of Spokane had a right to enact such ordinances as reasonably and fairly tend to affect the health, welfare, convenience and safety of the public of that city.

No case has been cited, nor has our independent research found one, which is directly in point. The following are some of those which are most nearly analogous; several courts have held that a municipality may, by ordinance, restrict the operation of laundries to certain districts of the city, or forbid their operation within a certain distance from any church, school or hospital: *Walcher v. First Presbyterian Church*, 184 Pac. (Okl.) 106, 6 A. L. R. 1593; *In re Hang Kie*, 69

Cal. 149, 10 Pac. 327; *Ex parte Quong Wo,* 161 Cal. 220, 118 Pac. 714; and other cases cited in the note to *Walcher v. First Presbyterian Church, supra.* Other courts have held that ordinances confining the operation of laundries to certain districts within the city were invalid because unreasonable: *In re Tie Loy,* 26 Fed. 611; *In re Hong Wah,* 82 Fed. 623, and other cases found in the note to *Walcher v. First Presbyterian Church, supra.* In *Standard Oil Co. v. City of Kearney,* 106 Neb. 558, 184 N. W. 109, 18 A. L. R. 95, it was held that an ordinance prohibiting the operation of gasoline and oil stations close to the street, but on private property, within certain districts of the city, was unreasonable and void. In the case of *People v. Gibbs,* 186 Mich. 127, 152 N. W. 1053, Ann. Cas. 1917B 830, an ordinance prohibiting auctioneering at any time other than between the hours of 8 a.m. and 6 p.m. was unreasonable as not having relation to the health, comfort and welfare of the public. Substantially the same holding was made in the case of *Hayes v. City of Appleton,* 24 Wis. 542. In *City of Buffalo v. Marion,* 13 Misc. Rep. 639, 34 N. Y. Supp. 945, a municipal ordinance prohibiting auctioneering of watches after 6 p.m. was held to be a valid regulation. In *White v. Kent,* 11 Ohio St. 550, an ordinance prohibiting public sales upon the streets, sidewalks and public places of a certain municipality was upheld as being reasonable. In *Ex parte Hadacheck,* 165 Cal. 416, 132 Pac. 584, a municipal ordinance forbidding the operation of brick kilns within a restricted area was held valid, and *In re Montgomery,* 163 Cal. 457, 125 Pac. 1070, a like holding was made with reference to the operation of a lumber yard. In *Shepard v. Seattle,* 59 Wash. 363, 109 Pac. 1067, 40 L. R. A. (N. S.) 232, we upheld a municipal ordinance prohibiting private sanitariums being main-

tained within two hundred feet of any other building without the written consent of the owners of such neighboring property. In *Spokane v. Camp*, 50 Wash. 554, 97 Pac. 770, 126 Am. St. 913, we held valid an ordinance forbidding the keeping of livery stables within certain districts.

We are unable to see how § 11 of the ordinance in question has any reasonable relation to the public health, comfort, morals or welfare. There is no testimony before us to show wherein the ordinance might tend to accomplish these purposes, and we are left to determine the matter upon suggestions of counsel and our own knowledge of such affairs. It is said in appellant's brief that an auction held in the buildings located on the business streets of the city tend to attract crowds and thereby obstruct the sidewalk. But there are innumerable things which time and custom have led us to believe are perfectly legitimate means of carrying on business which tend to attract crowds and interrupt, more or less, the easy flow of the pedestrians on the sidewalks. Any attractive display in the show windows of a merchant will accomplish this; yet no person, it seems to us, would say that such display might be prohibited. Any merchant who publishes information to the public that on certain days he will sell his goods at unusually cheap prices will also attract crowds to his store, and thus interfere to some extent with the use of the sidewalks and probably create some unusual stir and noise. But no case is, or, we think, can be, cited which sustains an ordinance which would prohibit such manner of doing business. Of course, ordinances tending to regulate and control the crowds which might be thus or otherwise attracted may be passed and enforced. Indeed, one section of the ordinance in question here expressly provides that

no auctioneer shall unduly cause the streets or side-walks to be blocked because of carrying on his business. It was well said, in the old case of *Hayes v. City of Appleton, supra,* that:

"The power of the common council, therefore, extends only to the making of regulations that are for the good of the city. They must be such as prudence and reason require, not necessarily prejudicial to private rights and interests, and not inconsistent with the laws of the state. It is not shown in the case what evil was to be prevented or good promoted by the passage of the ordinance in question; nor can we judicially see that any restriction of the kind was necessary. No cause for it, whether good or bad, is even suggested in the brief submitted by counsel for the city; and it is impossible for us to conjecture that any sufficient one existed. We can readily conceive that there might be times and circumstances when the exercise of such restraining power might be necessary and proper. If, for example, in times of great popular excitement and tumult, the assembling of people in considerable numbers at auction rooms and such places after sundown might lead to riots and disturbances of the public peace, the restriction would undoubtedly be lawful. And so, too, it might be proper to restrain such sales on particular days or at particular places; or, if the manner of conducting them was particularly objectionable, to prescribe how they should be conducted. . . . The selling of property at public auction being a lawful business, so recognized by the statutes of the state, and the prohibition in question being general in its character, restraining the transaction of such business at particular hours during each day when it is customary throughout the country to transact it, and having been enacted without any sufficient cause shown, it follows that it is an unreasonable and unlawful interference with the freedom of trade, and that the ordinance is for that reason void."

It seems to us that an ordinance forbidding auctioneering after sundown is much more reasonable and

necessary in its regulation than § 11 of the ordinance under consideration; for it is well known that crimes are committed more easily under cover of darkness than during the daytime. Those cases concerning ordinances restricting to certain designated limits such businesses as laundries, livery stables, cemeteries, etc., are justly upheld on the ground of public health. The ordinance which the Nebraska supreme court held unreasonable in *Standard Oil Co. v. City of Kearney, supra* (prohibiting gas filling stations within certain defined districts of a city) has a much greater relation to the public than the one we are considering, for there automobiles would be required to frequently cross over the sidewalk to get to the filling station, thus causing inconvenience and creating some danger to users of the sidewalks. An ordinance prohibiting the operation of a brick yard at a certain locality in a city was upheld in *Ex parte Hadacheck, supra,* on the ground that "the burning of brick is a trade which may, when conducted in close proximity to dwelling houses, be so offensive to those residing in the vicinity as to constitute a nuisance" because of the smoke and offensive odors.

The appellant places great reliance upon the case of *People ex rel. Schwab v. Grant,* 126 N. Y. 473, 27 N. E. 964. There is a wide distinction between that case and the one here, because the ordinance there did nothing more than require auctioneers, doing business in the city of New York, to obtain a license, pay certain license fees and give certain bonds. We do not for a moment question the reasonableness of such an ordinance. It is, indeed, very directly conducive to the public welfare that there should be some regulation affecting the character of the persons who shall be permitted to exercise the business of auctioneering, because of the superior opportunities such persons

have of deceiving and defrauding the public who deal with them.

The holding of an auction sale in a store within the business districts of the city cannot seriously relate to the public health, or probably even to the public morals or welfare, and it can only indirectly relate to the public convenience. But it must be remembered that those who choose to go to cities to live must be content to be crowded and to accommodate themselves to less space and less freedom of action than if they lived in the country. If the purpose of § 11 of this ordinance were to prohibit one from carrying on the distinct and permanent business of auctioneering over long periods of time in the district described, then a different question might be presented, but § 11 is infinitely broader than that.

We conclude that the portion of the ordinance which we have quoted is unreasonable and therefore unenforcible. The judgment is affirmed.

MAIN, C. J., MACKINTOSH, and MITCHELL, JJ., concur.